UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lisa Dorthea Paulsen,

        Plaintiff,                    Court File No.  16-cv-927 (DSD/LIB)

v.                                  **REPORT AND RECOMMENDATION**

Nancy A. Berryhill,
Acting Commissioner of Social Security,[1]

        Defendant.

Plaintiff, Lisa Dorthea Paulsen ("Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits by the Social Security Administration ("SSA"). The District Court has referred the present case to the undersigned United States Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Both parties submitted cross-motions for summary judgment, [Docket Nos. 14, 16], and the Court took the matter under advisement on the written submissions. For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 14], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**.

**I. PROCEDURAL HISTORY**

On November 8, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II, as well as, an application for supplemental security

---

[1]After the filing of this lawsuit, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security. The Clerk of Court is therefore directed to substitute Nancy A. Berryhill as defendant to this action. See, Fed. R. Civ. P. 25(d).

income under Title XVI of the Social Security Act. (Tr. 11).[2] Plaintiff alleged that her disability began March 25, 2011. (Tr. 11). The Commissioner denied Plaintiff's claims on May 13, 2013, and again, upon reconsideration, on August 2, 2013. (Tr. 11). On August 30, 2013, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 11).

Administrative Law Judge Virginia Kuhn ("ALJ") conducted a hearing on September 3, 2014. (Tr. 11). The Plaintiff along with an independent vocational expert, Kenneth E. Ogren, ("IVE Ogren") testified at the hearing. (Tr. 19). Plaintiff was represented by an attorney at the administrative hearing. (Tr. 11). On November 6, 2014, the ALJ issued a decision denying Plaintiff's request for a period of disability, disability insurance benefits, and supplemental security income. (Tr. 11–24). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 24).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 6–7). Subsequently, on February 9, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On April 8, 2016, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 14, 16], and the Court took the matter under advisement on the written submissions.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 13], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 13 exhibits. (See, [Docket No. 13]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II. STANDARDS OF REVIEW

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the

Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. at 1–3).

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705, (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### III. DECISION UNDER REVIEW

In this matter, Administrative Law Judge Virginia Kuhn ("ALJ") made the following determinations during the five-step disability evaluation process:

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since March 25, 2011, through November 6, 2014, the date of the ALJ's decision. (See, Tr. 13). This finding is not in dispute. The Court will refer to this period as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff "had the following severe impairments: borderline intellectual functioning; generalized anxiety disorder; and major depressive disorder." (Tr. 13). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Specifically, the ALJ found that Plaintiff did not have any mental impairment or combination of impairments which met or medically equaled "the criteria of listing 12.02, 12.04, and 12.06." (Tr. 14). Plaintiff does not

5

challenge this particular finding made by the ALJ at step three. Plaintiff does, however, challenge the ALJ's finding at step three that Listing 12.05C "is not the proper listing for evaluation of borderline intellectual functioning as [Plaintiff] does not meet the 12.05 definitional A criteria for requisite deficits of adaptive functioning." (Tr. 15).

At step four, the ALJ made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following no exertional limitations: routine, repetitive 3-to-4 step tasks and instructions, fixed and predictable tasks and instructions with minimal, if any, workplace changes from day to day, tasks in which the instructions can be visually presented or demonstrated as opposed to requiring reading of instructions to complete the tasks, no strict production rate pace, no independent decision making that goes along with routine, repetitive fixed and predictable nature of the instructions and tasks, and tasks that can be performed independently meaning that the tasks would not require collaboration or teamwork with coworkers for completion of the task and would not also require direct interaction with the public to complete the tasks.

(Tr. 17–18). In making that RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] not consistent with the objective medical evidence and other evidence as defined in 20 CFR 404.1529(c)(4) and 416.929(c)(4)." (Tr. 18). Based on that RFC determination, the ALJ found that Plaintiff was unable to perform any past relevant work which according to testimony given by vocational expert Kenneth E. Ogren was semi-skilled work as an assembler and certified nursing assistant (CNA). (Tr. 23).

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are [other] jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 22). Relying upon

6

testimony from vocational expert Kenneth E. Ogren, the ALJ specifically found that among the occupations Plaintiff would be able to perform were rack room worker (Dictionary of Occupational Titles No. 920.665-014) of which there are 4,700 positions in the regional economy of Minnesota; polisher (Dictionary of Occupational Titles No. 709.687-012) of which there are 2,500 positions in the regional economy of Minnesota; and stuffer (Dictionary of Occupational Titles No. 780.684-066) of which there are 4,900 positions in the regional economy of Minnesota. (Tr. 23–24). Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 24).

## IV. ANALYSIS

Plaintiff raises only one issue on her appeal of the ALJ's decision: Whether the ALJ's finding that Plaintiff did not have the significant deficits in adaptive functioning to warrant consideration under Listing 12.05C was supported by substantial evidence in the record. (Plf.'s Mem., [Docket No. 15], at 1, 10).

"Listing 12.05C requires: 1) significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22, 2) a valid verbal, performance, or full scale IQ of 60 through 70, and 3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." Scott v. Berryhill, 855 F.3d 853, 856 (8th Cir. 2017) (quotations omitted) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C).

The ALJ found that Listing 12.05C was not the proper Listing to consider in this case. In determining that Listing 12.05C was not the proper Listing for evaluation of Plaintiff's borderline intellectual functioning, the ALJ noted that Plaintiff's activities of daily living and

work history demonstrated that Plaintiff lacked the requisite deficits of adaptive functioning. Specifically, the AJL noted that Plaintiff lived independently with her husband; provided childcare and rearing; drove; had a history of semi-skilled substantial gainful activity level work; advocated for herself adequately and independently in medical visits; and despite special education services in high school, completed her certified nursing assistant (CNA) certification. (Tr. 15). The ALJ specifically noted that although Plaintiff claims she had her certified nursing assistant certification exam read to her, "she also needed to demonstrate certain skills and she passed all requirements for certification." (Tr. 15).

The ALJ also considered Plaintiff's counsel's reliance on Maresh v. Barnhart, 438 F.3d 897, 900 (8th Cir. 2006), for the proposition that "special education classes by their nature are sufficient evidence of deficits of adaptive functioning during the development period;" however, the ALJ found the argument unpersuasive noting that Maresh "requires a look at the overall evidence in determining if special education as one factor along with the overall evidence establishes the requisite deficits of adaptive functioning initially manifested prior to age 22 and continuing." (Tr. 15). Plaintiff now concedes that Maresh does not stand for the proposition that special education classes by their very nature are alone sufficient evidence of deficits of adaptive functioning during the developmental period. (Plf.'s Mem., [Docket No. 15], at 14).

The ALJ acknowledged the "2007 psychological evaluation with IQ and other testing, which resulted in a diagnosis of mild mental retardation based on the Full Scale IQ s[c]ore of 67, and [Plaintiff's] significant impairment in adaptive functioning in the areas of communication, work, academic skills and interpersonal relationships," as well as, the September 2012, psychological evaluation containing IQ testing that resulted in a Full Scale IQ of 67; however, the ALJ assigned greater weight to other evidence in the record which contradicted the 2007 and

8

2012 psychological evaluations. (Tr. 15–16). The ALJ specifically noted that the 2007 psychological evaluation was based on Plaintiff's self-report "which was not the same as her report of daily and overall functioning in reports completed at Exhibit 4E in February 2013, Exhibit 7E, and the examination, mental status examination and activities reported in the May 2013 SSA consultative examination at 5F." (Tr. 15–16 (citing Tr. 227–36, 245–54, 382–86)). The ALJ also noted that "the reported activates during the 2012 visit and the assessment of a Global Assessment of Functioning (GAF) Scale score of 60 [did] not support the requisite deficits of adaptive functioning for evaluation of intellectual disability under Listing 12.05." (Tr. 20).

The ALJ determined that "[t]he reported activities and overall functioning in these documents demonstrate greater activity and ability than reported in 2007 and in the 2012 assessment," and the ALJ gave "greater weight" to the reported activities and overall functioning "in concluding [Plaintiff did] not have the requisite deficits of adaptive functioning required for evaluation under Listing 12.05." (Tr. 16). The ALJ thoroughly discussed the September 2012, psychological evaluation, and concluded that "[a] review of the overall evidence, including the claimant's testimony at the hearing supports a higher level of adaptive functioning." (Tr. 20).

The ALJ's finding that Plaintiff did not demonstrate the requisite deficits of adaptive functioning to warrant consideration of Listing 12.05C is supported by substantial evidence in the record as a whole.

In an undated Function Report, as well as, a Function Report dated February 15, 2013, Plaintiff reported that she takes care of others with the assistance of her husband, including taking care of her children, husband, and cat; performs her own personal care tasks, including dressing, bathing, grooming, and feeding herself, although it sometimes stresses her to perform

9

these tasks; performs household chores, including doing the laundry, cleaning the bathroom and windows, dusting, vacuuming, and washing the dishes; goes outside every day; drives herself; goes shopping every other week for groceries, clothing, and things for the apartment; and with some help, pays bills, counts change, handles a savings account, and uses a check book. (Tr. 227–32, 245–52). Along with those Function Reports, Plaintiff also provided a written narrative of her typical day indicating that—although she sometimes becomes stressed and depressed—when she wakes up in the morning she gets her son and daughter up and ready; showers; plays with her kids, if she is not feeling too stressed or depressed; fixes lunches for everyone; gets "stuff done for the day;" prepares dinner when her kids arrive home from school; watches television as a family; prepares and puts her children to bed; and then prepares herself for bed. (Tr. 229–30, 247–48). Plaintiff also reported that her hobbies included watching television, playing outside with her children, playing with animals, making "stuff," and reading children's books. (Tr. 233). She stated that her reading and writing were not "really good" as she did not "always understand vocabulary in books," however, she completed both of her Function Reports herself. (Tr. 227–36, 245–54).[3]

At the September 3, 2014, administrative hearing, Plaintiff testified that she then-presently lived with her husband and two children; had previously lived independently for "years;" and after high school, lived in a dorm with three roommates. (Tr. 36–38, 50, 58–59). She further testified that she performed a wide range of household chores, including cooking, cleaning, doing laundry, and paying the bills before she got married to her current husband. (Tr. 37, 47, 50, 56–57). Plaintiff testified that before she married she went shopping, and since she married, she now goes shopping with her husband. (Tr. 37, 45). Plaintiff also testified that she

---

[3] At the end of each Function Report it asks for the name of the person completing the form, and on both forms Plaintiff printed only her own name. (Tr. 236, 254).

prepares her seven year old child for school each day, drives her seven year old child to school, and cares for her three year old child who stays home with her all day. (Tr. 45, 47, 58, 59). Moreover, she testified that she has worked as a caregiver for her grandmother for a period of three years. (Tr. 40, 67).

On May 7, 2013, Plaintiff had a psychological consultative examination with Donald E. Wiger, PhD, LP, where she similarly recounted her activities of daily living largely as she had reported them in her two previous Function Reports. (Tr. 382–85). During the examination, Dr. Wiger observed that while Plaintiff was "somewhat fidgety," she remained seated during the entire interview; followed directions; understood every question; and did not stare into space, easily shift focus, talk excessively, blurt out answers, interrupt, or get easily distracted. (Tr. 384). Plaintiff also "adequately counted by 3s beginning with 1 such as 1, 4, 7;" "correctly said the months of the year forward and backward," albeit "somewhat slowly;" "correctly spelled the word WORLD forward and backward;" "correctly multiplied 3x4;" "recalled 3 of 3 words immediately and after five and thirty minutes;" correctly remembered the names of her previous schools and teachers, as well as, her recent meals and events in her life; and was able to "abstractly interpret[] a proverb." (Tr. 384). She was unable to count backward from 100 by 7s, and she incorrectly said that 4x7 was 24. (Tr. 384). Dr. Wiger opined that Plaintiff likely had borderline intellectual functioning; however, she was able to understand directions, carry out mental tasks with persistence and pace concordant with intellectual functioning, respond appropriately to other people, and handle the stressors of the workplace. (Tr. 385).

Plaintiff also completed her certified nursing assistant (CNA) certification, and she performed worked in that capacity. (Tr. 38–39, 41–42, 51–55).[4] As the ALJ noted, Plaintiff claimed she had her certification exam read to her; however, Plaintiff was also required—during

---

[4] IVE Ogren testified that Plaintiff's work as a certified nursing assistant was considered semi-skilled work. (Tr. 23).

11

the certification exam—to successfully demonstrate the skills she had learned, which she did. Plaintiff was also able to perform those skills during her subsequent multiple employment positions after receiving her nursing assistant skills certification. (Tr. 38–39, 41–42, 51–55). Between 1999 and 2011, Plaintiff worked each year (1999 to 2011) as a certified nursing assistant, personal care assistant, or caregiver completing a number of tasks in the course of her employment, including bathing, caring for, and dressing the individuals in her care; cleaning the residence of the individual in her care; cooking for the individuals in her care; doing the laundry of the individuals in her care; and writing and completing reports regarding her tasks. (Tr. 220–26).

Courts have consistently found that individuals performing daily activities such as those Plaintiff reported performing and with work histories similar to that of Plaintiff have failed to demonstrate the adaptive function limitations necessary to meet Listing 12.05C due to the successful history of performance of those activities and employment positions. See, Scott v. Berryhill, 855 F.3d 853, 856–57 (8th Cir. 2017) (finding that an individual diagnosed with borderline intellectual functioning who had a history of special education classes, read poorly, could not balance a checkbook, but did live independently, communicate well, drive, shop for groceries, follow instructions, and perform household chores, as well as, hold previous semi-skilled and unskilled employment did not show deficits in adaptive functioning); Ash v. Colvin, 812 F.3d 686, 691 (8th Cir. 2016) (finding no deficit in adaptive functioning where plaintiff did not compete high school, attended special education classes, had an IQ in the range to satisfy prong one of Listing 12.05C, had a work history of unskilled and semi-skilled jobs, could not balance a checkbook or manage finances without assistance, but lived independently, had a driver's license, shopped for groceries, cooked, and performed household tasks); Johnson v.

Colvin, 788 F.3d 870, 872–73 (8th Cir. 2015) (finding that being able to read somewhat, write, and count change; care for oneself and a child; and perform most household tasks was inconsistent with the deficits in adaptive functioning contemplated by Listing 12.05C); Cheatum v. Astrue, 388 Fed. App'x 574, 576–77 (8th Cir. 2010) (finding that an individual diagnosed with borderline intellectual functioning who "had maintained employment in semi-skilled and unskilled positions for many years" and could "perform activities of daily living and light housework, drive a car, help prepare meals, and care for her father who was suffering from Alzheimer's" did not show deficits in adaptive functioning).

Nevertheless, Plaintiff offers several arguments as to why this finding by the ALJ at step three regarding the inapplicability of Listing 12.05C was not supported by substantial evidence in the record as a whole.

First, Plaintiff argues that "the ALJ selectively reference[d] examples of [Plaintiff's] activities of daily living as described in function reports completed by [Plaintiff] and in her testimony at the hearing." (Plf.'s Mem., [Docket No. 15], at 11). To demonstrate this alleged selective referencing, Plaintiff points instead to her 2007 psychological evaluation, the lack of effectiveness Plaintiff exhibited in certain activities of daily living, and Plaintiff's 2012 Vineland-II test which was administered during her 2012 psychological evaluation. (Id. at 11–13).[5]

---

[5] On August 15, 2007, August 30, 2007, and September 12, 2007, Plaintiff underwent a multi-session psychological evaluation at the Sioux Trails Mental Health Center with examiner Katie Wojtalewica, PsyD, LP. (Tr. 479–82). During that assessment, Plaintiff "completed the WAIS-III, a multifaceted measure of cognitive functioning and her performance produced a Full Scale IQ of 67, which is in the Mild Mental retardation range (1st percentile), a Verbal IQ of 65 (1st percentile), and a Performance IQ of 77 (6th percentile)." (Tr. 481). Dr. Wojtalewica, based on the test results and her interview of Plaintiff, opined that Plaintiff had "Mild Mental Retardation" based on her test results and "her significant impairments in adaptive functioning in the areas of communication, work, academic skills, and interpersonal relationships." (Tr. 482).
On September 19, 2012, and September 21, 2012, Plaintiff underwent a multi-session psychological evaluation with Licensed Psychologist Dr. Elizabeth Caven, PsyD. (Tr. 369–77). During the September 2012, evaluation, Plaintiff was administered eleven different tests, including a Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV)

Regarding her 2007 psychological evaluation and her 2012 psychological evaluation, which included a Vineland-II test, Plaintiff argues that the results of each psychological evaluation reflects deficits in adaptive functioning. Plaintiff notes that her 2007 psychological evaluation found scores indicating deficits in adaptive functioning, and it also noted "that her day-to-day living skills were strengths that she may use to compensate for skill in other areas." (Id. at 12 (citing Tr. 372)). Regarding the ALJ's opinion that the 2007 psychological evaluation and the 2012 Vineland-II test "were based on Plaintiff's self-reports, which conflicted with statements made during Dr. Wiger's examination and the two Function Reports contained in the record," Plaintiff argues that they are in fact consistent with one another. (Id. at 13). The ALJ highlighted the portions of the Function Reports, testimony, and examination statements which were inconsistent with the 2007 and 2012 psychological evaluations, while Plaintiff points to other selective portions of the Function Reports, testimony, and examination statements which she believes are consistent with the 2007 and 2012 psychological evaluations. Similarly, in arguing that the ALJ selectively referenced portions of Plaintiff's activities of daily living, Plaintiff herself merely references the other portions of Plaintiff's reported daily activities which she believes supports an opposite conclusion to that reached by the ALJ, and she asserts that the ALJ failed to "thoroughly analyze how effective" Plaintiff was at the activities she could perform. Essentially, Plaintiff asks the Court to reweigh the evidence favorable to her position and to reach a conclusion contrary to the one the ALJ reached. In so arguing, Plaintiff only summarizes the portions of evidence from the record which she believes could support her own

---

and a Vineland Adaptive Behavior Scales-II (Vineland-II) test. The WAIS-IV resulted in Plaintiff receiving a Full Scale IQ of 67. (Tr. 370). Plaintiff's Vineland-II test, which measures the personal and social skills of individuals from birth through adulthood, resulted in a score of 53, which "classifie[d] her general adaptive functioning as low." (Tr. 371). The Vineland-II was based on the interview with Plaintiff, and the report specifically notes that the test is based on what the individual actual does "rather than what he or she is able to do." (Tr. 371). Dr. Caven opined a diagnosis of Major depressive disorder, recurrent, sever with psychotic features; generalized anxiety disorder; and mild mental retardation. (Tr. 376). Dr. Caven further opined that Plaintiff's "Mild Mental Retardation . . . existed concurrent with demonstrated deficits in adaptive behavior." (Tr. 376).

14

conclusion that the 2007 and 2012 psychological evaluations were consistent with the record as a whole and should have been given greater weight.

To the extent that Plaintiff argues that there was also substantial evidence in the record that might have supported Plaintiff's conclusion regarding the evidence, the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court must affirm the ALJ if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." See, Milam, 794 F.3d at 983. Such is the present case now before the Court.

The ALJ specifically discussed the 2007 and 2012 psychological evaluations and found that those assessments were contradicted by other substantial evidence in the record, including Plaintiff's own reported daily activities and reports made during a different consultative examination. The ALJ also noted that the psychological evaluations were based on Plaintiff's self-reports which also contradicted Plaintiff's self-reported Function Reports. Accordingly, the ALJ assigned greater weight to other evidence in the record including Plaintiff's reported daily activities and work history, which contradicted the 2007 and 2012 psychological evaluations. Such a finding is a proper reason for discounting the 2007 and 2012 psychological evaluations. See, e.g., Ash v. Colvin, 812 F.3d 686, 691 (8th Cir. 2016) (affirming the ALJ's decision to deny benefits where claimant had IQ scores in the range required by Listing 12.05C to demonstrate deficits in adaptive functioning, but ALJ reasoned the IQ scores were "not a true reflection of [claimant's] adaptive functioning ability" because claimant "lived independently, performed

personal care tasks and household chores, drove a car, used a computer, operated a cash register, and socialized with others").

Moreover, the ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] not consistent with the objective medical evidence and other evidence as defined in 20 CFR 404.1529(c)(4) and 416.929(c)(4)." (Tr. 18). Importantly, Plaintiff does not contest this finding.

Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered, and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

Plaintiff also argues that the ALJ erred in finding that Plaintiff's certified nursing assistant certification and subsequent significant work as a CNA evidenced a lack of adaptive functioning. (Plf.'s Mem., [Docket No. 15], at 13). The ALJ found that while Plaintiff claims she had her certified nursing assistant certification exam read to her, "she also needed to demonstrate certain skills and she passed all requirements for certification." (Tr. 15). Plaintiff argues that the ALJ failed to consider the daily challenges Plaintiff faced in subsequently performing her CNA jobs.[6] Plaintiff does not specify what challenges she faced in performing her duties other than the need for special accommodations and instructions in completing her certified nursing assistant certification exam which the ALJ previously and specifically addressed.

---

[6] Plaintiff also argues that the ALJ failed to consider that she was fired from her employment as a result of her inability to perform the tasks which she alleges she testified to at the administrative hearing; however, during the portion of the administrative hearing to which Plaintiff cites, Plaintiff only testified that she "got fired from Milaca" without providing a reasons for that discharge and describes various difficulties she had in different positions she held. (Tr. 40–43, 51). While in a different portion of her testimony Plaintiff does conclusorily testify that she was fired because she "couldn't understand," she then explains that each of the times she left a position it was for personal reasons, including desiring a different shift and moving to work at a different nursing home. (Tr. 40–43). She also provides various reasons she was fired from another position, including raising her voice, asking for help, and having a messy uniform. (Tr. 65–66). Plaintiff fails to point to any testimony where she testified she was let go from a certified nursing assistant position because of any deficit in adaptive functioning.

16

The ALJ did not err in finding that Plaintiff's employment as a certified nursing assistant, along with other substantial evidence in the record as a whole, demonstrated a lack of deficits in adaptive functioning. See, Scott v. Berryhill, 855 F.3d 853, 856–57 (8th Cir. 2017); Ash v. Colvin, 812 F.3d 686, 691 (8th Cir. 2016). "While evidence that [an individual] is able to perform work is not relevant if she otherwise meets the requirements of Listing 12.05C, evidence of her ability to work is relevant to show whether or not she has demonstrated the required deficits in adaptive functioning." Id. (citing Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Cheatum v. Astrue, 388 Fed. App'x 574, 576 n. 3 (8th Cir. 2010)). In the present case, Plaintiff from 1999 to 2011, worked each year as a certified nursing assistant, personal care assistant, or caregiver completing a number of tasks in the course of her employment, including bathing, caring for, and dressing the individuals in her care; cleaning the residence of the individual in her care; cooking for the individuals in her care; doing the laundry of the individuals in her care; and writing and completing reports regarding her tasks. (Tr. 220–26). The ALJ considered Plaintiff's past semi-skilled work as a certified nursing assistant, including the special accommodations she required to complete her certified nursing assistant certification exam, and the ALJ determined that Plaintiff's work, along with other evidence in the record as a whole, demonstrated a lack of deficits in adaptive functioning. Courts have upheld similar conclusion by other ALJs finding that past semi-skilled work demonstrated a lack of deficits in adaptive functioning. See, e.g., Scott v. Berryhill, 855 F.3d 853, 856–57 (8th Cir. 2017); Ash v. Colvin, 812 F.3d 686, 691 (8th Cir. 2016); Cheatum v Astrue, 388 Fed. App'x 574, 576–77 (8th Cir. 2010) (claimant failed to establish the deficits in adaptive functioning necessary to meet Listing 12.05C where "evidence also showed that [claimant] had maintained employment in semi-skilled and unskilled positions for many years").

As already observed, Plaintiff simply asks the Court to reweigh independently the evidence the ALJ has already considered and substitute its own judgment for that of the ALJ; a task which the Court cannot undertake under the applicable standard of review. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

While some evidence in the record may support or suggest Plaintiff had some possible level of deficits in adaptive functioning, "[t]he mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996). The ALJ was entitled to find, based on Plaintiff's self-reported daily activities, her ability to perform past semi-skilled work, and the appropriately limited weight provided to 2007 and 2012 psychological evaluations, that Plaintiff lacked the deficits in adaptive functioning needed to be considered under Listing 12.05C.

Accordingly, the Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff lacked the requisite deficits in adaptive functioning was supported by substantial evidence in the record.

Other than her argument that she meets the criteria for Listing 12.05C, Plaintiff does not point to any other portion of the ALJ's decision which she argues is unsupported by substantial evidence in the record.[7]

---

[7] In any event, on the Court's review of the record as a whole, the ALJ's RFC determination, her decision that Plaintiff could not perform her past relevant work, and her decision that jobs existed in significant numbers in the national economy which Plaintiff could perform were each supported by substantial evidence in the record.

Consequently, the Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff was not disabled as defined by the Social Security Administration was supported by substantial evidence in the record.

Therefore, it is recommended that Plaintiff's Motion for Summary Judgment, [Docket No. 14], be **DENIED**, that Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**, and that this matter be **DISMISSED with prejudice**.

## V.  CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 14], be **DENIED**; and

2. Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**.

Dated:  June 29, 2017                                s/Leo I. Brisbois
                                                     Leo I. Brisbois
                                                     U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).